Filed 9/27/16

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re the Marriage of JUDY KAY and PHILIP KURTIS CHAPMAN. | C079615 |
| JUDY KAY CHAPMAN,<br><br>Respondent,<br><br>v.<br><br>PHILIP KURTIS CHAPMAN,<br><br>Appellant. | (Super. Ct. No. 01FL06530) |

APPEAL from a judgment of the Superior Court of Sacramento County, Steven M. Gevercer, Judge. Affirmed in part and reversed in part.

Walzer Melcher, Steven K. Yoda and Christopher C. Melcher for Appellant.

Michael R. Locks for Respondent.

The main issue in this case is whether one spouse's unilateral election (after a marital settlement agreement and judgment of dissolution) to change from one type of

1

military benefit (military retirement that is taxable and community property) to another type of military benefit (combat-related special compensation that is not taxable and separate property) can defeat the community property interest of the other spouse set forth in the marital settlement agreement.

The answer is "no." "It is a 'settled principle that one spouse cannot, by invoking a condition wholly within his control, defeat the community interest of the other spouse.' " (*In re Marriage of Gillmore* (1981) 29 Cal.3d 418, 423.)

The trial court here correctly determined that "the post-judgment election" by appellant Philip Kurtis Chapman (Philip) "of Combat[-]Related Special Compensation in lieu of military pension payments" does not "relieve[] [Philip] of his agreement to pay [respondent Judy Kay Chapman (Judy)] $475 per month for her community property share of his military retirement." We reverse the trial court's order, however, because the remedy the court selected was improper. The trial court imposed a constructive trust on the funds received by Philip as combat-related special compensation benefits. But the remedy of a constructive trust is available only for wrongful conduct. (*Calistoga Civic Club v. City of Calistoga* (1983) 143 Cal.App.3d 111, 116.) Here, Philip's election was not wrongful; he had every right to choose to receive combat-related special compensation benefits in lieu of military retirement benefits. But he could not, by that election, defeat Judy's right to receive $475 per month for her community property interest in the pension payments he voluntarily and unilaterally relinquished. Accordingly, we will reverse and remand.

FACTUAL AND PROCEDURAL BACKGROUND

For 20 years, from July 1971 to July 1991, Philip served in the United States Navy, including in the Vietnam War and the Persian Gulf War. For 17 of those years, beginning in August 1974, Philip and Judy were married. In 1991, after Philip retired, he started receiving military retirement benefits.

2

In 2003, Philip and Judy stipulated to a judgment of dissolution in a marital settlement agreement. The stated intent of the agreement was "to effect a substantially equal division between [Judy] and [Philip] of their community assets . . . ." Philip and Judy agreed that Judy "shall take [¶] . . . [¶] [Judy's] community portion of [Philip]'s military retirement pay in the amount of $475.00 per month." Judy "acknowledge[d] that [certain] property . . . [wa]s the separate property of [Philip] and . . . waive[d] any . . . interest in said property," which included, "social security and disability accounts" and "[a]ny and all work related benefits." In April 2004, the trial court approved the agreement.

After the judgment of dissolution, the Department of Veterans Affairs offered Philip the opportunity to apply for combat-related special compensation benefits in lieu of his military retirement benefits, as he had been diagnosed with posttraumatic stress disorder (PTSD) because of his active combat roles. The dollar amounts of the two benefits were the same, but the difference was that combat-related special compensation benefits were not taxable. Because of the tax advantage, Philip elected to receive combat-related special compensation benefits in lieu of his military retirement benefits. In October 2004, Philip became eligible to receive combat-related special compensation benefits.

Philip continued paying Judy $475 per month until March 2014. Judy then filed a lawsuit seeking to enforce the terms of the judgment of dissolution to continue her monthly payments of $475.

The trial court ruled for Judy, reasoning that Philip and Judy "intended for [Judy] to continue to receive her original share of [Philip]'s retirement pay even if he waived all or a portion of that pay to obtain [combat-related special compensation benefits]," "because there is nothing in the language of the judgment that would make it reasonably susceptible to the interpretation that the parties had agreed that [Philip] would reduce or eliminate the retirement asset by his voluntary waiver sometime in the future."

"Accordingly a constructive trust is imposed on the funds received by [Philip] as [combat-related special compensation] benefits in order to remedy the monthly financial impact on [Judy] of his post-judgment election to receive disability benefits in lieu of military retirement. [Philip] is not required to satisfy this obligation with his [combat-related special compensation] benefits, and is free to use any other assets in order to satisfy this obligation."

Philip timely appealed from this order.

DISCUSSION

The gravamen of Philip's appeal is that under federal law, military disability benefits, such as combat-related special compensation, are not considered "retired pay" that is divisible community property under state law. We have no disagreement with this proposition. The problem for Philip, however, is that his unilateral election of combat-related special compensation benefits could not defeat Judy's community property interest set forth in the marital settlement agreement. We explain these principles and their application below.

Retirement benefits generally represent deferred compensation for work performed by an employee. (*In re Marriage of Benson* (2005) 36 Cal.4th 1096, 1104.) Thus, to the extent the work was performed during the marriage, such benefits are community property. (*Id.* at pp. 1103-1104.) This includes military retirement payments to the extent they derive from military service performed during the marriage. (*Casas v. Thompson* (1986) 42 Cal.3d 131, 139.) Consistent with this rule, under federal law, "a court may treat disposable retired pay payable to a [military] member" as community property. (10 U.S.C. § 1408(c).)

There is a different rule, however, with respect to veterans' disability benefits. "The purpose of disability benefits . . . is primarily to compensate the disabled veteran for 'the loss of earnings resulting from his compelled premature military retirement and from diminished ability to compete in the civilian job market' [citation] and secondarily to

4

compensate him for the personal suffering caused by the disability." (*In re Marriage of Stenquist* (1978) 21 Cal.3d 779, 787.)  Thus, under federal law, a court may not treat those benefits as community property.  (See *Mansell v. Mansell* (1989) 490 U.S. 581, 585, 594-596 [104 L.Ed.2d 675, 683,  688-689] [where a military spouse had been receiving both disability benefits and retired pay at the time of dissolution, the California state court could divide as community property the retired pay but not the disability payments].)[1]

Sometimes, as happened here, disabled military retirees choose to receive combat-related special compensation benefits, if they are entitled to them.  This allows veterans who have a combat-related disability to receive tax-free benefits in exchange for an equal reduction in their retirement pay.  (10 U.S.C. § 1413a(b); 26 U.S.C. § 104(a)(4), (b)(2)(C).)  Payments made as combat-related special compensation benefits "are not retired pay."  (10 U.S.C. § 1413a(g).)  Federal law precludes division of combat-related special compensation benefits as community property.  (See 10 U.S.C. § 1408(a)(4)(C); *Mansell v. Mansell*, *supra*, 490 U.S. at pp. 594-596 [104 L.Ed.2d at pp. 688-689].)[2]

This, however, does not mean that where, after dissolution, Philip unilaterally elected to relinquish his military retirement benefits that were community property in favor of combat-related special compensation benefits that were separate property, he could defeat Judy's community property interest as set forth in the marital settlement

---

[1]     In keeping with the rule about disability benefits, "disposable retired pay" is defined as:  " 'the total monthly retired pay to which a member is entitled' less, among other things, amounts deducted as a result of the waiver required to receive disability benefits." (*In re Marriage of Smith* (2007) 148 Cal.App.4th 1115, 1120-1121, quoting 10 U.S.C. § 1408(a)(4).)

[2]     The analysis in the preceding three paragraphs was largely drawn from *Merrill v. Merrill* (Ariz. Ct. App. 2012) 230 Ariz 369 [284 P.3d 880].

agreement. Instructive here are two cases from the California Supreme Court, *Marriage of Gillmore* and *Marriage of Stenquist*, which we discuss next.

In *Marriage of Gillmore*, the husband and wife separated after 14 years of marriage, and the trial court entered a final judgment of dissolution, specifically reserving jurisdiction over the husband's retirement plan. (*In re Marriage of Gillmore*, *supra*, 29 Cal.3d at p. 421.) After the marriage was dissolved, the husband continued working even when he became eligible to retire. (*Id*. at p. 422.) The wife requested an order directing the husband to pay to her immediately her share of the pension benefits. (*Ibid.*) The trial court denied the request, holding it had discretion to delay distribution of the benefits until the husband actually retired. (*Ibid.*) The California Supreme Court reversed. (*Id*. at p. 429.) The court held that the husband could not "time his retirement to deprive [the wife] of an equal share of the community's interest in his pension. It is a 'settled principle that one spouse cannot, by invoking a condition wholly within his control, defeat the community interest of the other spouse.' " (*Id*. at p. 423, quoting *In re Marriage of Stenquist*, *supra*, 21 Cal.3d at p. 786.)

*In re Marriage of Stenquist* "involved a husband's election to receive disability benefits (usually separate property), rather than retirement pay (usually community property). [The California Supreme Court in *Stenquist*] held that the husband could not use this election to deprive his wife of her interest in his retirement benefits. '[To] permit the husband, by unilateral election of a "disability" pension, to "transmute community property into his own separate property" [citation], is to negate the protective philosophy of the community property law as set out in previous decisions of this court.' " (*In re Marriage of Gillmore*, *supra*, 29 Cal.3d at pp. 423-424.) "The result of the husband's unilateral decision in *Stenquist* would have been to deprive the wife of any interest in his retirement benefits." (*Marriage of Gillmore*, at p. 424.) "Thus, although the husband in *Stenquist* had every right to choose a disability pension rather than retirement pay, his choice did not prevent the court from ordering him to pay to the wife an amount

6

equivalent to what her interest would have been had he chosen retirement pay." (*Marriage of Gillmore*, at p. 426.) "The employee spouse cannot by election defeat the nonemployee spouse's interest in the community property by relying on a condition solely within the employee spouse's control." (*Id.* at p. 425.)

The same is true here. While Philip had every right to choose combat-related special compensation benefits rather than military retirement benefits, his choice could not defeat Judy's community property interest in the retirement benefits. Philip made this choice after they separated, after they stipulated to the judgment of dissolution, after they entered into the marital settlement agreement, and after the court approved the agreement. In the agreement, Philip and Judy agreed that Judy "shall take [¶] . . . [¶] [Judy's] community portion of [Philip's] military retirement pay in the amount of $475.00 per month." There was nothing in the language of the agreement that would make it reasonably susceptible to the interpretation Philip urges, which is that he could unilaterally reduce or eliminate the retirement asset by his voluntary waiver sometime in the future.

Our conclusion is also not, as Philip urges, inconsistent with federal law. "*Mansell* held merely that the federal law does not grant state courts the power to divide 'military retirement pay that *has been* waived to receive veterans' disability benefits.' " (*In re Marriage of Smith* (2007) 148 Cal.App.4th 1115, 1123-1124.) Here, the trial court did not divide military retirement pay that had been waived; it enforced the preexisting marital settlement agreement by ordering Philip to pay Judy $475 per month to compensate her for her community property share of the retirement pay he unilaterally and voluntarily relinquished.[3]

---

[3] Moreover, contrary to Philip's assertion, no reservation of jurisdiction clause was necessary here for Judy to raise the issue. Judy was not attempting to modify or change the judgment, but to enforce it based upon Philip's unilateral attempt to modify its terms.

7

The trial court did err, however, in imposing a constructive trust "on the funds received by [Philip] as [combat-related special compensation] benefits in order to remedy the monthly financial impact on [Judy] of his post-judgment election to receive disability benefits in lieu of military retirement," because the remedy of a constructive trust is available only for wrongful conduct. A constructive trust requires "the existence of a res (property or some interest in the property); the plaintiff's right to that res; and the defendant's acquisition of the res by some wrongful act." (*Calistoga Civic Club v. City of Calistoga*, *supra*, 143 Cal.App.3d at p. 116; see also Civ. Code, § 2224 ["One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it"].) "A constructive trust cannot exist unless there is evidence that property has been wrongfully acquired or detained by a person not entitled to its possession." (*Communist Party v. 522 Valencia, Inc.* (1995) 35 Cal.App.4th 980, 991, italics omitted.)

Here, Philip did nothing wrong in electing to receive combat-related special compensation benefits in lieu of military retirement benefits. He testified he did it for the tax benefits to himself and he did not understand "there was a difference between combat related special compensation and military retirement benefits in terms of what military spouses are entitled to."

The absence of any wrongful conduct, however, does not leave Judy without a remedy. Philip testified he has "about [a] $7,000 a month income." The trial court was entitled to order Philip to pay $475 per month to ensure Judy receives the benefit of the bargain she made in the marital settlement agreement to receive her community portion of Philip's military retirement pay in that amount. Whether the trial court may also

Family courts always have jurisdiction to enforce orders and judgments. (Fam. Code, § 290.)

8

fashion some further equitable remedy to secure Judy's right to that payment is a matter we leave to the trial court in the first instance. At this point, all we hold with respect to the remedy is that imposition of a constructive trust is improper.

## DISPOSITION

The portion of the postjudgment order imposing a constructive trust on the funds received by Philip as combat-related special compensation benefits is reversed. The portion of the order directing Philip to pay Judy $475 per month for her community property interest in the military retirement benefits he relinquished is affirmed.

The matter is remanded to the trial court to exercise its discretion to fashion further equitable relief to secure Judy's right to that payment, if the court determines such relief is lawfully available and appropriate.

Judy is entitled to her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)


/s/_____
Robie, J.



We concur:


/s/_____
Blease, Acting P. J.


/s/_____
Mauro, J.


9